UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL D. MILEWSKI,

                      Plaintiff,

    -against-                                                1:05-CV-1399
                                                                       (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

## DECISION AND ORDER

**I.     BACKGROUND**

    **A.     Procedural History**

Plaintiff Michael D. Milewski ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB") on November 14, 2003. Administrative Transcript ("AT") 40-42. The application was denied initially. AT 26-29. A request was made for a hearing. AT 31. A hearing was held before an Administrative Law Judge ("ALJ") on March 16, 2005. AT 382-403. In a decision dated May 27, 2005, the ALJ found that Plaintiff is not disabled. AT 9-22. The Appeals Council denied Plaintiff's request for review on September 10, 2005. AT 4-7. Plaintiff commenced this action on November 9, 2005 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

    **B.     Contentions**

Plaintiff makes the following claims:

    (1) The Commissioner erred in finding that neither of Plaintiff's severe impairments, either alone or in combination, meets or equals the level of severity of any listed impairment. Dkt No. 6 at 9-10.

    (2) The Commissioner erred in failing to find that Plaintiff's depression with anxiety and/or

pain disorder are severe impairments imposing significant limitations within the meaning of the Social Security Act. Dkt. No. 6 at 10-11.

(3) The Commissioner did not make a proper credibility determination regarding Plaintiff's statements of disabling pain and daily physical and mental limitations in this case. Dkt. No. 6 at 11-12.

(4) The Commissioner's determination that the claimant is "not disabled" at step five in the sequential analysis must be reversed as it is not supported by substantial evidence in the record. Dkt. No. 6 at 13-14.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Dkt. No. 9.

**C.     Facts**

Plaintiff was forty-nine years old at the time of the hearing. AT 385. Plaintiff reached the tenth grade in high school. AT 386. Plaintiff's past work experience includes working as an automobile mechanic. AT 386-87. Plaintiff alleges that he became unable to work on December 19, 2002. AT 40. He alleges disability due to heart bypass surgery, chest pain, a hernia, and back pain. AT 67. Plaintiff also testified that he experiences depression and anxiety. AT 392, 395.

**1.     Physical Condition**

**a.     Heart**

**i.     Binoy Singh, M.D.**

On October 15, 2002, Plaintiff started treatment with Binoy Singh, M.D., a cardiologist. AT 173. Dr. Singh diagnosed Plaintiff as suffering from, *inter alia*, chest pain and coronary artery disease. Id. On December 20, 2002, Plaintiff underwent coronary artery bypass graft surgery, with

a quadruple bypass.[1]  AT 67, 71, 106-16.

On September 30, 2003, Plaintiff underwent an exercise stress test and a stress echocardiograph ("ECG").  AT 179-81.  The stress test was negative for angina and negative for atypical chest pain.  AT 179.  The ECG was normal.  AT 181.

On January 16, 2004, Dr. Singh indicated that Plaintiff is limited in his abilities to lift and carry, and specifically that Plaintiff is able to lift and carry ten pounds occasionally.  AT 176.  Dr. Singh found no limitations in Plaintiff's abilities to stand and/or walk, and sit.  Id.  Dr. Singh indicated that Plaintiff is limited in his abilities to push and/or pull using his upper extremities.  Id.

### ii.    Robert Roche, D.O.

From August 25, 2003 to November 11, 2004, Plaintiff treated with Robert Roche, D.O.  AT 250-93, 312-15, 318, 327-60.  Dr. Roche diagnosed Plaintiff as suffering from, *inter alia*, chest wall pain.  Id.  Dr. Roche referred Plaintiff to pain management and prescribed various pain relief medications, including Ultram, Vicodin, and Percocet.  Id.

During an exercise stress test performed on November 10, 2003, Plaintiff showed an excellent exercise duration and capacity for Plaintiff's age.  AT 203.  There was no evidence of ischemia.  Id.

A nuclear stress test performed the same day showed a "[n]ormal LV cavity size with mildly depressed LV global systolic function without scintigraphic evidence of an irreversible or a reversible perfusion defect consistent with a prior myocardial infarction or exercise induced myocardial ischemia."  AT 202, 359.

### iii.   David Gamburg, M.D.

Plaintiff was referred for pain management to David Gamburg, M.D., who Plaintiff saw on

---

[1] The surgery was performed by Joseph J. DeRose, Jr., M.D.  AT 106-16.

3

October 8, 2003.  AT 189.  Dr. Gamburg prescribed Vicodin, "since the patient states that it works best for him."  Id.  Dr. Gamburg also prescribed Lidoderm patches, "for temporary relief."  Id.

### iv.   Alan Auerbach, M.D.

On February 19, 2004, Alan Auerbach, M.D., a state agency review physician, completed a Request for Medical Advice form.  AT 294-95.  Dr. Auerbach reviewed medical evidence and concluded that Plaintiff "should be capable of [performing] medium work."  AT 295.

### v.   Manar Hanna, M.D.

On April 2, 2004, Plaintiff underwent an internal medicine examination by Manar Hanna, M.D.  AT 296-99.  Dr. Hanna diagnosed Plaintiff as suffering from sternum pain secondary to bypass surgery, possible sympathetic reflux dystrophy, lower back pain of unknown etiology, depression, and a history of a myocardial infarction.  AT 299.  An x-ray of Plaintiff's lumbo-sacral spine showed disc space narrowing at L4-5 and L5-S1.  AT 300.  Dr. Hanna concluded that Plaintiff "is restricted from activities requiring heavy lifting and carrying because of the reproducible pain in the sternum.  He has a mild restriction for activities requiring great exertion because of the history of bypass surgery in the past."  AT 299.

### b.   Hernia

On November 24, 2003, Plaintiff underwent a right inguinal hernia repair, which was performed by Julia Sone, M.D.  AT 200-01.  Plaintiff tolerated the procedure well.  AT 201.  On December 11, 2003, Dr. Sone noted that Plaintiff's surgical incision was clean with no signs of infection.  AT 191.  By January 12, 2004, Plaintiff's hernia had healed.  Id.

### c.   Kidney

On October 21, 2003, Plaintiff saw Stephen Yu, M.D., a urologist.  AT 248-49.  Dr. Yu noted that a CT scan showed masses on Plaintiff's right kidney.  AT 249, 205-06.  An ultrasound

4

performed on October 29, 2003 showed two "simple cysts in the mid and lower pole region of the right kidney." AT 204. There were no findings prompting a biopsy. Id. A CT scan of Plaintiff's abdomen performed on January 9, 2004 showed no interval change in the appearance of the bilateral renal masses. AT 197-98.

### 2. Mental Condition

#### a. Robert Roche, D.O.

On November 26, 2003, Plaintiff complained of symptoms of depression to Dr. Roche. AT 258. Dr. Roche diagnosed Plaintiff as suffering from depression with elements of generalized anxiety disorder and post-traumatic stress disorder. AT 256. Dr. Roche prescribed Zoloft and Paxil. AT 256, 333.

#### b. Joseph Bernier, Ph. D.

On April 26, 2005, Plaintiff underwent an independent consultative examination by Joseph Bernier, Ph. D., a psychologist. AT 368-73. Dr. Bernier noted that Plaintiff's "somewhat dramatic and overly elaborative manner of presentation left me with questions about the reliability of the history he provided." AT 368.

Dr. Bernier diagnosed Plaintiff as suffering from a pain disorder with pain secondary to cardiovascular disease and surgical complications per Plaintiff's report. AT 372. Dr. Bernier also found that Plaintiff manifests alcohol dependence in sustained complete remission. Id.

Dr. Bernier completed a Medical Source Statement in which he indicates that Plaintiff has moderate limitations in his abilities to understand and remember detailed instructions, and to carry out detailed instructions. AT 374. He also indicated that Plaintiff has slight limitations in interacting appropriately with the public, supervisor(s), and co-workers, as well as moderate limitations in responding appropriately to work pressures in a usual work setting, and responding

appropriately to changes in a routine work setting.  AT 375.

## II. DISCUSSION

### A. Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 13. At the second step, the ALJ determined that Plaintiff's non-cardiac chest pain and pain disorder are severe impairments. AT 14. At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the regulations. Id. At the fourth step, the ALJ found that Plaintiff retains the RFC to perform entry-level light work and therefore found that Plaintiff is unable to perform his past relevant work. AT 18-19. At the fifth step, the ALJ consulted the Medical-Vocational Guidelines and concluded that Plaintiff is capable of performing work that exists in significant numbers in the national economy. AT 20. The ALJ therefore concluded that Plaintiff was not disabled. Id.

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination

of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

**C.    Severity**

As stated above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.  The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs."  20 C.F.R. § 404.1521(b).  Basic work activities which are relevant for evaluating the severity of a physical impairment include the physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  20 C.F.R. §§ 404.1521(b); see also Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996).

An impairment is severe if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. 20 C.F.R. § 416.920(c). The severity analysis does no more than "screen out *de minimis* claims." If the disability claim rises above the *de minimis* level, then further analysis is warranted. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; Dixon, 54 F.3d at 1031.

Plaintiff alleges that the ALJ erred by failing to find that his "depression with anxiety" and somatoform pain disorder are severe impairments. Dkt. No. 6 at 10-11. Plaintiff points out that he has a "long-standing history of depression with features of anxiety" and that Plaintiff was diagnosed as suffering from somatoform pain disorder by "the Agency's own psychiatric consultant." Id. at 10.

A review of the decision reveals that the ALJ determined that Plaintiff's pain disorder is severe. AT 14. In contrast, the ALJ found that Plaintiff's depression and anxiety are not severe impairments. Id. The ALJ noted that while Dr. Bernier diagnosed Plaintiff as suffering from a pain disorder, Dr. Bernier made no diagnosis of a depressive or anxiety disorder. Id. The ALJ also noted that Dr. Bernier found no significant psychiatric functional limitations. Id.

Moreover, Dr. Roche's progress notes suggest that Plaintiff's mental condition improved. For instance, on June 4, 2004, it was noted that Plaintiff reported that his anxiety and depression decreased due to Paxil. AT 332. Plaintiff also reported an increase in his self-confidence and emotional stability. Id.

Lastly, the record indicates that at the time Plaintiff applied for disability benefits, he alleged

no disabling mental impairment. See AT 67. Also, in a Report of Contact from the Agency dated February 9, 2004, it is noted that Plaintiff's "main issue" is his chest pain and that he did not see depression as "disabling by itself." AT 98.

Accordingly, the ALJ's finding regarding Plaintiff's mental condition is supported by substantial evidence. Therefore, the ALJ's finding in this regard are affirmed.

### D. Listed Impairments

Pursuant to the third step of the five-step process, if the claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In cases in which the disability claim is premised upon one or more listed impairments of appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." Berry, 675 F.2d at 469.

Plaintiff claims that the ALJ erred by failing to find that his chronic low back pain and non-anginal chest pain meets or equals "one of the Listings." Dkt. No. 6 at 9. The Court notes that Plaintiff cites no supporting evidence. Moreover, it is a claimant's burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (citing 42 U.S.C. § 423(d)(1)(A)). Nevertheless, the Court will address the conditions in question.

#### 1. Low Back Pain

The ALJ found that Plaintiff has no severe impairments secondary to back pain. AT 14. The ALJ pointed out that there is no evidence that Plaintiff received treatment for any orthopedic

10

spinal condition. Id. The ALJ also noted that Plaintiff's treating physician, Dr. Roche, diagnosed no orthopedic spinal condition. Id. The ALJ further pointed out that the examination performed by Dr. Hanna on April 2, 2004 showed no evidence of spinal loss of range of motion and there was no evidence of reflex, motor, or sensory loss involving Plaintiff's upper and lower extremities. Id. Indeed, during the examination, Plaintiff exhibited full flexion, extension, lateral flexion, and full rotary movement bilaterally of the lumbar spine. AT 298. Moreover, at the hearing, Plaintiff testified that he had not experienced back pain "for a while" and that he was taking no medications for this condition. AT 391. Accordingly, the ALJ's finding in this regard is supported by substantial evidence.

   **2.**  **Chest Pain**

  The ALJ found that Plaintiff's chest pain was severe, but failed to meet or medically equal a listed impairment. AT 14. The ALJ noted that Plaintiff underwent coronary artery bypass grafting in December of 2002. Id. The ALJ pointed out, however, that a nuclear stress test performed on November 10, 2003 revealed a mildly depressed LV global systolic function without evidence of a perfusion defect. Id. The ALJ also noted that an exercise test revealed that Plaintiff was able "to reach 9-10 METS of exertion." AT 14. Indeed, during the exercise stress test performed on November 10, 2003, Plaintiff showed an excellent exercise duration and capacity for Plaintiff's age. AT 203. There was no evidence of ischemia. Id. Accordingly, the ALJ cited substantial evidence to support his finding that Plaintiff's non-anginal chest pain did not meet or equal a listed impairment. Therefore, the ALJ's finding in this regard is affirmed.

  **E.**  **Credibility**

  Plaintiff argues that the ALJ improperly determined Plaintiff's credibility. Dkt. No. 6 at 11-12.

11

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

12

The ALJ found that Plaintiff's allegations were not totally credible. AT 18-19. In making this determination, the ALJ discussed Plaintiff's symptoms, which included severe chest pain, breathing problems, depression, dizziness, back problems, poor memory, sleepiness, an inability to make decisions, and anxiety attacks. AT 18. The ALJ also noted that Plaintiff claimed that his chest pain prevented him from walking, pushing, pulling, moving his neck, and lifting more than one gallon of milk. Id. The ALJ also discussed that Plaintiff claimed that he saw a counselor for depression, but Plaintiff "did not get very much out of the sessions." Id. The ALJ also noted that Plaintiff stated that he was no longer able to engage in hobbies, such as hunting, fishing, small engine repair, and yard work, due to chest pain. AT 19. The ALJ further noted that Plaintiff reported that his activities of daily living included cooking, cleaning, doing laundry, and shopping. AT 14.

The ALJ noted, however, that while Plaintiff alleged that he experienced dizziness, chest pain, shortness of breath, and panic attacks, he denied experiencing most of these symptoms when examined by his treating physician, Dr. Roche. AT 19. The ALJ also noted that on August 9, 2004, Plaintiff complained of experiencing chest pain, id., but Dr. Roche found that the chest wall pain was exacerbated by "fixing up a new home that the patient has purchased . . . with large amounts of hammering, sanding and working with dry wall." AT 330. The ALJ commented that during Plaintiff's next visit to Dr. Roche, on September 16, 2004, Plaintiff complained of abdominal discomfort that occurred while on a camping trip. AT 19, 329. The ALJ noted that when Plaintiff "was next seen on November 11, 2004, he again denied [any] general discomfort with or without activity, diaphoresis and shortness of breath." AT 19. Indeed, Dr. Roche's progress note indicates that Plaintiff "denies any anginal discomfort with or without activity, no diaphoresis, no dyspnea." AT 327.

The ALJ also pointed out that the reliability of Plaintiff's allegations was questioned by Dr. Bernier. AT 19. Indeed, Dr. Bernier noted that Plaintiff's "somewhat dramatic and overly elaborative manner of presentation left me with questions about the reliability of the history he provided." AT 368. An ALJ must consider information provided by examining psychologists about a claimant's "symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (SSA July 2, 1996). Therefore, the ALJ properly considered Dr. Bernier's finding.

Accordingly, the credibility determination is supported by substantial evidence. Therefore, the ALJ's finding in this regard is affirmed.

**F.    RFC**

Plaintiff summarily claims that the RFC finding was improper. Dkt. No. 6 at 13-14. RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.); see 20 C.F.R. §§ 404.1545, 416.945. "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. SSR 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996). RFC is then used to determine whether the

14

claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

The ALJ found that Plaintiff is able to stand, sit, and walk with no restrictions, but considering Plaintiff's chest pain and bypass surgery, "it is reasonable to find that he does have some restrictions with regard to strenuous lifting and carrying, pushing and pulling." AT 18. The ALJ further found that Plaintiff may have difficulty understanding, remembering, and carrying out complex instructions and directions. Id. The ALJ therefore concluded that Plaintiff retains the RFC to perform entry-level light work.[2] Based on the following, the ALJ's determination is supported by substantial evidence.

### 1. Physical Condition

Plaintiff successfully underwent coronary artery bypass grafting in December of 2002. AT 67, 71, 106-16. The ALJ noted that a subsequent nuclear stress test performed on November 10, 2003 showed normal LV cavity size with mildly depressed LV global systolic function without evidence of an irreversible or reversible perfusion defect that was consistent with a prior myocardial infarction or exercise-induced myocardial ischemia. Id. The ALJ also considered that during an exercise stress test performed the same day, Plaintiff showed an excellent exercise duration and capacity for Plaintiff's age. AT 15.

The ALJ also considered Dr. Hanna's report. AT 15-16. Dr. Hanna noted that Plaintiff denied a present history of angina, as well as any cardiac symptoms, since his surgery. AT 15, 296.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

The only abnormal finding noted during the musculoskeletal examination was pain produced by pressing on the upper sternum. AT 298. Dr. Hanna found that Plaintiff was restricted from activities involving "heavy lifting and carrying." AT 299. Dr. Hanna also found that Plaintiff "has a mild restriction for activities requiring great exertion." Id.

The ALJ also found that the treatment notes from Plaintiff's treating physician, Dr. Roche, indicate that Plaintiff "is far more active and able to engage in more strenuous activities than he alleges." AT 18. For instance, as noted, on August 9, 2004, Plaintiff complained of experiencing chest pain, but Dr. Roche found that plaintiff's chest pain was exacerbated by "fixing up a new home that the patient has purchased . . . with large amounts of hammering, sanding and working with dry wall." AT 330. On September 16, 2004, Plaintiff complained of abdominal discomfort that occurred while on a camping trip. AT 329.

Lastly, the ALJ discussed the opinion of Plaintiff's treating cardiologist, Dr. Singh. AT 18. On January 16, 2004, Dr. Singh indicated that Plaintiff is limited in his abilities to lift and carry, specifically that Plaintiff is able to lift and carry ten pounds occasionally, and is limited in his abilities to push and/or pull using his upper extremities. AT 176. However, Plaintiff has no limitations in his abilities to stand and/or walk, and sit. Id. The ALJ relied on Dr. Singh's opinion except for the limitation regarding lifting and carrying. AT 18.

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the

medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ explained that the medical evidence fails to support the lifting and carrying restriction established by Dr. Singh. AT 18. The ALJ pointed out that Plaintiff reported to Dr. Roche that he had performed "large amounts of hammering, sanding, and working with dry wall" while "fixing up a new home." AT 18, 330. The ALJ also pointed out that Plaintiff possesses a near-normal cardiovascular capacity and Dr. Sing placed no specific limitation on Plaintiff's capacity secondary to cardiovascular problems. AT 18. Indeed, as noted, during the exercise stress test, Plaintiff showed an excellent exercise duration and capacity for Plaintiff's age. AT 203. In light of the foregoing, the ALJ's analysis of Dr. Singh's opinion is supported by substantial evidence. Therefore, the ALJ properly evaluated Dr. Singh's opinion.

### 2. Mental Condition

Regarding Plaintiff's mental condition, the ALJ reviewed Dr. Bernier's findings. AT 16-17. As noted, Dr. Bernier found that Plaintiff's "somewhat dramatic and overly elaborative manner of presentation left me with questions about the reliability of the history he provided." AT 368. Dr. Bernier also noted Plaintiff's allegation that he experienced panic attacks, but that Plaintiff was unable to recall his last episode. AT 369. The ALJ also reviewed the Medical Source Statement completed by Dr. Bernier. AT 18. Dr. Bernier indicated that Plaintiff has moderate limitations in understanding, remembering, and carrying out detailed instructions. AT 374.

It is the ALJ's duty to determine a claimant's RFC, and not simply to "agree[]" with a physician's opinion. See 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual

17

functional capacity."). Here, the ALJ properly evaluated the evidence and supported the RFC finding with substantial evidence. Therefore, the RFC finding is affirmed.

### G. Step Five Determination

Plaintiff argues that the ALJ's finding made at step five of the sequential analysis is not supported by substantial evidence. Dkt. No. 6 at 13-14.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. §§ 404.1566(a), 416.966(a). The ALJ may apply Medical-Vocational Guidelines ("the grids") or consult a vocational expert ("VE"). See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2. If a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations," the application of the grids is inappropriate. Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

Plaintiff summarily claims that the step five determination is based upon an improper RFC assessment and an improper credibility assessment. Dkt. No. 6 at 13. As previously discussed, the RFC and credibility findings are supported by substantial evidence. Plaintiff also claims that he "suffers from both exertional and non-exertional impairments," and therefore the ALJ improperly relied on the grids. Dkt. No. 6 at 13. However, Plaintiff fails to identify to which impairments he refers and fails to elaborate on how reliance to the grids was improper.

At step five, the ALJ found that Plaintiff is a younger individual (forty-nine years old), who

has a limited education and no transferable skills from any past relevant work and/or transferability of skills is not an issue. AT 20. The ALJ considered these factors along with Plaintiff's RFC. Id. The ALJ then consulted Medical Vocational Guideline Rule 202.18 and concluded that Plaintiff is not disabled. Id. The ALJ properly considered Plaintiff's vocational factors and made no error consulting the grids. Accordingly, the ALJ's step five determination is supported by substantial evidence and is affirmed.

## IV.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Social Security Administration decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:     July 30, 2008
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge